

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

SHAUN BONDURANT,                          ◊
                                          ◊
    Plaintiff,                        ◊
                                          ◊
VS.                                       ◊     No. 04-1278-T/An
                                          ◊
JERRY VASTBINDER, ET AL.,                 ◊
                                          ◊
    Defendants.                       ◊

---

ORDER ASSESSING $150 FILING FEE
ORDER OF PARTIAL DISMISSAL
AND
ORDER TO ISSUE AND EFFECT SERVICE OF PROCESS
ON THE REMAINING CLAIMS

---

Plaintiff Shaun Bondurant, Tennessee Department of Correction ("TDOC") prisoner

number 354826, an inmate at the West Tennessee State Penitentiary in Henning, Tennessee,

filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on October 21, 2004 in connection

with his previous confinement at the Obion County Jail ("Jail"). The Court issued an order

on May 10, 2005 directing the plaintiff to comply with the Prison Litigation Reform Act of

1995 ("PLRA"), 28 U.S.C. §§ 1915(a)-(b), or pay the civil filing fee, within thirty days.

Plaintiff filed the required documentation on May 19, 2005. The Clerk shall record the

defendants as Obion County Sheriff Jerry Vastbinder, Jail Administrator William Sudsbury,

Assistant Jail Administrator Ricky Fitzpatrick, Officers Martha Wahley, Brenda Brown,

This document entered on the docket sheet In compliance
with Rule 58 and/or 79 (a) FRCP on 12-29-05

Harold Godwin, Jason Rage, Stephan Jones, Terry Cranford, Bob Morris, Tim Daws, Roger Moore, Stephanie Buchanan, Delyla Eaves, Cathy Roberson, and Jason Moore, and Doctor Dodd.

I.   Assessment of Filing Fee

Under the PLRA, 28 U.S.C. § 1915(a)-(b), all prisoners bringing a civil action must pay the full filing fee of $150 required by 28 U.S.C. § 1914(a).[1] The statute merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, plaintiff has properly completed and submitted both an *in forma pauperis* affidavit and a trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's

---

[1] Effective March 7, 2005, the civil filing fee was increased from $150 to $250. However, the complaint in this case was filed prior to March 7, 2005; therefore, the $150 filing fee will be applied.

account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10, until the entire $150 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment. All payments and account statements shall be sent to:

> Clerk, United States District Court, Western District of Tennessee, 262 U.S. Courthouse, 111 S. Highland Ave., Jackson, TN 38301

and shall clearly identify plaintiff's name and the case number on the first page of this order.

If plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order. If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison. The Clerk is further ORDERED to forward a copy of

this order to the warden of the WTSP to ensure that the custodian of the plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

II.    Analysis of Plaintiff's Claims

The complaint in this case asserts a large number of claims concerning conditions at the Jail, where the plaintiff allegedly was confined intermittently from March 8, 2003 until some unspecified date.[2] First, the plaintiff contends that the Jail lacks "a safe and complete medical and dental procedure to policy" [sic]. Plaintiff complains that, at intake, his medical history was taken by an officer, rather than by a medical professional, and he was not given a thorough medical examination.  He also complains that there are no sick call forms; instead, inmates request medical attention by writing letters to the doctor.  Plaintiff asserts he was seen by defendant Dodd about a lump on his chest that he had had for a year prior to arriving at the Jail, and Dodd told him it was an ingrown hair that would eventually go away.  About three weeks later, the complaint alleges that the lump was the size of a golf ball and painful, so he sought medical attention again.  Several weeks later, he was seen by the doctor, who allegedly did not know what the lump was but who prescribed unspecified medication that did not help.  Eventually the plaintiff cut a drainage hole in the lump with a pair of nail clippers.  At some point the plaintiff was taken to see the doctor again, who

---

[2]  The complaint alleges that plaintiff was booked at the Jail on March 8, 2003 and, again, on September 27, 2004.  The plaintiff apparently was in federal custody from February 23, 2004 until September 27, 2004.  Prior to February 23, 2004, plaintiff allegedly also spent some time at the Madison County Jail.

punctured the lump with a needle to drain it and prescribed medication and hot packs. The plaintiff allegedly did not receive the medication for a week. When he eventually received the supplies, he realized that the heat packs consisted of cleaning rags that were used to clean the kitchen. The lump on the plaintiff's chest continued to get worse. Several weeks later the plaintiff saw the doctor again, who told him the lump needed to be cut out but the sheriff needed to authorize the procedure. Defendant Vastbinder allegedly told the plaintiff the Jail would not pay for the procedure but it could be performed if the plaintiff or his family paid for it. Eventually, after another two or four months, the lump on the plaintiff's chest started to heal on its own, but it left a bad scar and a growth that is still on the plaintiff's chest. During this time, plaintiff was allegedly prescribed Elavil for anxiety, depression, and stress, but that medication was taken away by the sheriff. It is not clear whether the medication was prescribed prior to the plaintiff's arrival at the Jail or whether defendant Dodd wrote the prescription.

Second, the plaintiff contends he received inadequate dental care while at the Jail. After he had been at the Jail for six months, the plaintiff contends he started having severe pain and swelling due to a gum infection and loss of bone to his teeth. He was examined by the doctor to see whether he needed to see a dentist. Although defendant Dodd recommended that plaintiff be examined by a dentist, defendant Vastbinder said a dental examination would be allowed only if the plaintiff or his family paid for it. Other inmates were allegedly given furloughs to address unspecified problems, but the plaintiff contends

he could not get a furlough.

Third, plaintiff alleges he was detained by the federal government, transferred to the Madison County Jail, and then to the West Tennessee Detention Facility in Mason, Tennessee. While in federal custody, plaintiff alleges he was "then starting to obtain proper medical and dental attention" when he was returned to the Jail, where he was placed in administrative segregation and "[t]he same negligence of procedures and policy occurred." Plaintiff allegedly demanded to receive treatment for his teeth and gums, which were in pain, and he also sought the results of blood tests that had been performed in Mason. Defendant Vastbinder allegedly again told the plaintiff that he could receive dental care only if he or a family member paid for it.

The rather confusing allegations concerning the blood test are as follows:

> They did give me the results of my blood work. And the results was possative [sic] for Hep. C and negative for H.I.V. After giving me the results I requested some type of information on Hep. C., so I could know what precautions to take. They told me O'Kay [sic]. Well, I asked for this information for 5 days, to no avail. They never brought me or discussed this with me further. I was denied this information. I was finally shipped to W.T.S.P. in Henning, Tenn. where my blood test was done once again and nothing showed up. Why? For those days at [the Jail] I couldn't sleep from depression, stress, and worry, because of their negliect [sic] to educate and properly, and legally inform me of the effects of this infection. Not to say, falsely inform me.

It appears that the plaintiff received a false positive result on a hepatitis C test he took while in federal custody, and he is suing the Jail for failing to provide him with information for how to deal with a serious medical condition that, as it turns out, he did not have.

Fourth, plaintiff alleges that, on or about January 10, 2004, defendant Vastbinder had the plaintiff brought to his office to meet with him and Joe Walker of the Tennessee Bureau of Investigation. The sheriff stated that he had been given information, including letters and a map drawing, indicating that the plaintiff had been conspiring to kill him and his family upon his release. The sheriff refused to show the items to the plaintiff or tell him where he received the information. Plaintiff denied any knowledge of the alleged conspiracy, stating that "this was the first time I had ever seen him, and that I wouldn't of even known who he was if he wouldn't have introduced himself" and that he had "only been living in Obion Co. for 7 months and that I didn't even know where he lived, much less anything about his family." The sheriff allegedly threatened the plaintiff that "he would promise me that I would never leave his property if I was to ever be caught on it," and Walker allegedly said that "if anything ever did happen to any member of the sheriff's family that he personally would get me."

Plaintiff speculates that the sheriff received this information from Keith Woodward, the brother of the husband of a woman plaintiff was dating, who was housed in the same pod as the plaintiff. The complaint further alleges that Woodward stole a picture of his sister-in-law from the plaintiff, and that plaintiff feared poisoning because Woodward was allowed to work in the kitchen even though there was a hold on him in Kentucky, which is contrary to regulations. Plaintiff contends that all these actions violate his civil and privacy rights.

Fifth, plaintiff asserts that the Jail has no grievance policy.

Sixth, plaintiff asserts that the Jail has no disciplinary procedure or policy. When an infraction of the rules occurs, the policy is to lock the inmate up for a period up to seventy-two (72) hours. There are no write ups, no investigations, and no disciplinary board. The inmate is usually left naked, without bedding, reading materials, and hygiene products. Plaintiff also alleges that inmates are not always aware of infractions, which seems inconsistent with his allegations concerning the Jail's response to infractions. He contends he was denied parole because of infractions he did not know he had been charged with and because it appeared he was lying when he denied having write ups.[3] Plaintiff also alleges he was denied several visits because of disciplinary infractions he did not know he had received and, as a result, his family members made unnecessary trips to the Jail because he was not able to tell them in advance that he was not allowed visitors.

Seventh, plaintiff complains that inmates lack access to legal materials. He asserts that he requested legal materials many times and never received them. If he had received the legal materials he requested, he would have filed this lawsuit a long time ago.

Eighth, plaintiff asserts that mail is not just scanned, it is read. It is not clear whether plaintiff is referring to ingoing or outgoing mail. The complaint also asserts that legal mail is opened and read and indigent inmates are not provided with pens, paper, envelopes, and stamps.

---

[3] According to the TDOC website, plaintiff had a parole hearing on January 21, 2004.

Ninth, the complaint asserts that, during his fourteen months of incarceration at the Jail, he was taken outside for recreation and sunshine perhaps four to six times, perhaps because he was frequently in administrative segregation. Inmates also are not allowed to receive books and newspapers, and they have access to the library perhaps once a month. There is no exercise, and there are no sports. Inmates have no access to news, and religious materials are usually returned to the sender. There are no programs and activities. The library cart was brought around perhaps four times, with no access to legal or religious materials.

Tenth, plaintiff contends there is discrimination and unequal opportunities with respect to work procedures and policy. The Jail's rules do not permit inmates to work who have a violent criminal history, holds or detainers, an escape history, previous sex crimes, or a sentence of less than eight years. According to the plaintiff, the Jail does not honor its own policies, as some inmates receive work assignments even though the rules would forbid it, and other inmates do not receive assignments even though they have no disqualifying factors. Moreover, the same inmates repeatedly get work assignments even after committing infractions that should disqualify them under Jail rules. Inmates who are denied work assignments are injured because they do not receive sentence credit and they do not get the extra privileges that are afforded to workers.

The plaintiff seeks declaratory and injunctive relief and money damages in the amount of $250,000.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Even claims that have not been exhausted may be dismissed on the merits. 42 U.S.C. § 1997e(c)(2).[4] Certain aspects of plaintiff's complaint are subject to dismissal.

First, the complaint contains no factual allegations concerning defendants Sudsbury, Fitzpatrick, Wahley, Brown, Godwin, Rage, Jones, Cranford, Morris, Daws, Moore, Buchanan, Eaves, Roberson, and Moore. When a plaintiff completely fails to allege any action by a defendant, it necessarily "appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985). Accordingly, the Court DISMISSES the complaint with respect to these defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted. As a result, the only remaining defendants are Sheriff Vastbinder and Dr. Dodd.

Issues one, two, and three appear to raise Eighth Amendment claims concerning the

---

[4] Although the Court ordinarily considers, as a threshold matter, whether the plaintiff has complied with 42 U.S.C. § 1997e(a), in this case the complaint alleges that the Jail has no inmate grievance procedure.

provision of medical and dental care.[5]  The Eighth Amendment prohibits cruel and unusual punishment.  See generally Wilson v. Seiter, 501 U.S. 294 (1991).  An Eighth Amendment claim consists of both objective and subjective components.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson, 501 U.S. at 298; Brooks v. Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992).  The objective component requires that the deprivation be "sufficiently serious."  Farmer, 511 U.S. at 834; Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298.  The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind."  Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 297, 302-03.  The official's intent must rise at least to the level of deliberate indifference.  Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

In order to satisfy the objective component of an Eighth Amendment claim, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834; Stewart v. Love, 796 F.2d 43, 44 (6th Cir. 1982), or that he has been deprived of the "minimal civilized measure of life's necessities," Wilson, 501 U.S. at 298 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  The Constitution

---

[5]  Convicted inmates' rights stem from the Eighth Amendment, while pre-trial detainees' rights stem from the Fourteenth Amendment. Thompson v. County of Medina, 29 F.3d 238, 242 (6th Cir. 1994); Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985). The scope of a detainee's Fourteenth Amendment rights are equivalent to that of a convicted inmate under the Eighth Amendment. Thompson, 29 F.3d at 242; Roberts, 773 F.2d at 723. See generally Graham v. Connor, 490 U.S. 386, 395 n.10 (1989); Gilland v. Owens, 718 F. Supp. 665, 682-83 (W.D. Tenn. 1989). In this case, it is appears that the plaintiff had been convicted of a crime before his incarceration at the Jail. Even if that assumption is incorrect, the claims can be analyzed under Eighth Amendment principles because the scope of his rights under the Eighth and Fourteenth Amendments are equivalent.

"'does not mandate comfortable prisons.'" Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 349). Rather, "routine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" Hudson, 503 U.S. at 9 (quoting Rhodes, 452 U.S. at 347).

The Eighth Amendment proscription of cruel and unusual punishment prohibits prison authorities from displaying deliberate indifference to the serious medical needs of prisoners, because such indifference constitutes the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980) (quoting Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977)).

To establish liability under the Eighth Amendment for a claim based on failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. Farmer, 511 U.S. at 834; Helling v. McKinney, 509 U.S. 25, 32 (1993); Woods v. Lecureux, 110 F.3d 1215, 1222 (6th Cir. 1997); Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Thus:

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38 (emphasis added; citations omitted). Thus, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Estelle, 429 U.S. at 105-06 ; see also Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) ("Deliberate indifference . . . does not include negligence in diagnosing a medical condition.").

Some of the plaintiff's allegations concerning medical and dental treatment do not implicate the Eighth Amendment, including the allegations concerning the procedures at intake. The Eighth Amendment requires only that prison officials not display deliberate indifference to a serious medical need; there is no requirement that they implement optimal procedures for meeting future medical needs of inmates. Likewise, the allegation that Jail officials failed to provide the plaintiff with information concerning hepatitis C does not satisfy the objective component of an Eighth Amendment violation because the plaintiff did not, in fact, suffer from that condition.

13

The complaint also does not state a claim against defendant Dodd with respect to the remaining allegations in the first three issues, concerning the lump on the plaintiff's chest, the refusal to permit the plaintiff to have Elavil, and the failure to approve dental treatment. Defendant Dodd examined the plaintiff several times for the cyst and recommended a course of treatment. Likewise, he examined the plaintiff in response to his complaints about a toothache and recommended that he be seen by a dentist. To the extent the plaintiff contends that Dodd initially misdiagnosed the lump, medical malpractice does not violate the Eighth Amendment. Finally, the complaint does not allege that defendant Dodd had any role in depriving the plaintiff of his Elavil. As these are the only claims asserted against defendant Dodd, the Court DISMISSES the complaint with respect to him, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), for failure to state a claim on which relief may be granted.[6]

With respect to the fourth issue, concerning the investigation of plaintiff's alleged threat to Vastbinder and the allegations concerning inmate Woodward, it is not clear precisely what Vastbinder is alleged to have done that is actionable. The fact that Vastbinder or some other Jail official received evidence of a threat to Vastbinder and reported it to the Tennessee Bureau of Investigation is not actionable. To the extent the plaintiff is complaining about the use of threatening language by Vastbinder, he has no

---

[6] As a result, the only portions of the first three issues that remain are the claims against defendant Vastbinder for refusing to approve payment for medical treatment of the lump on the plaintiff's chest and for the plaintiff's dental work, and for depriving the plaintiff of his Elavil. Process will be issued as to these claims.

claim. The law is clear that verbal harassment does not violate the Eighth Amendment. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. at 299; <u>Ivey v. Wilson</u>, 832 F.2d 950, 955 (6th Cir. 1987) (holding that verbal abuse or harassment does not constitute punishment under the Eighth Amendment); <u>Johnson v. Moore</u>, No. 00-6038, 2001 WL 303346, at *2 (6th Cir. Mar. 20, 2001). Just as the Constitution "does not mandate comfortable prisons," <u>Wilson v. Seiter</u>, 501 U.S. at 298, it does not mandate polite prison guards. Thus, the use of abusive language and even racial slurs by Jail staff does not give rise to a federal constitutional claim. <u>Owens v. Johnson</u>, No. 99-2094, 2000 WL 876766, at *2 (6th Cir. June 23, 2000) ("The occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude."); <u>Williams v. Gobles</u>, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000); <u>Owens v. County of Muskegon</u>, No. 99-1379, 1999 WL 1253096, at *1 (6th Cir. Dec. 17, 1999) ("verbal threats do not constitute a § 1983 claim," "[t]he petty exchanges of insults between a prisoner and guard do not amount to constitutional torts"); <u>Murray v. United States Bureau of Prisons</u>, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("If Murray's allegations are true, the behavior of the prison officials was certainly not commendable. Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree.").

As for the various allegations concerning inmate Woodward, it is not clear how they constitute a constitutional violation or how defendant Vastbinder is responsible. There is

no allegation in the complaint that Jail officials were aware of possible animosity between plaintiff and Woodward, giving them a duty to protect plaintiff from possible poisoning by Woodward.

Moreover, Vastbinder cannot be held liable on a theory of failure to protect on the basis of his position as the sheriff of Obion County or as the county official ultimately responsible for operation of the Jail. There is no *respondeat superior* liability under § 1983. Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Instead:

> [t]here must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

Id. (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates yet fails to act generally cannot be held liable in his individual capacity. Shehee v. Luttrell, 199 F.3d at 300; Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 727-28 (6th Cir. 1996). In this case, the complaint is devoid of allegations that Vastbinder "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates," Bellamy, 729 F.2d at 421, or that the allegedly unconstitutional conduct described in the complaint was the direct result of Vastbinder's failure to perform a function he was legally obligated to perform, Doe v. Claiborne County, Tennessee, 103 F.3d 495, 511-12 (6th Cir. 1996).[7] Accordingly, even if it were assumed

---

[7]  Moreover, that standard is not satisfied by allegations that a defendant mishandled the plaintiff's grievance or failed to intervene on his behalf. Shehee, 199 F.3d at 300.

16

that someone at the Jail violated policy by permitting Woodward to work in the kitchen, defendant Vastbinder would not be liable.

Accordingly, the fourth issue is DISMISSED, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), for failure to state a claim on which relief may be granted.

In his fifth issue, plaintiff complains that the Jail lacks an inmate grievance procedure. Although 42 U.S.C. § 1997e(a) imposes a statutory requirement that prisoners exhaust their administrative remedies before filing lawsuits, there is no legal requirement that prisons have an inmate grievance mechanism. See 42 U.S.C. § 1997e(b) ("The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title."). The Court also DISMISSES the fifth claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), for failure to state a claim on which relief may be granted.

In his sixth issue, the plaintiff raises a general complaint about the failure of the Jail to implement a disciplinary policy. The allegations about this issue do not satisfy the requirements of Fed. R. Civ. P. 8(a)(2), which requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In this case, the complaint alleges both that discipline is overly harsh and that his record reflected write-ups that he did not know he had received. These allegations appear to be inconsistent. The Court ordinarily would order the plaintiff to amend his complaint to comply with the Federal

17

Rules of Civil Procedure.  That course is unavailable when a court screens a complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  McGore v. Wrigglesworth, 114 F.3d 601, 612 (6th Cir. 1997).  Under those circumstances, the appropriate course is to dismiss the complaint without prejudice to the plaintiff's right to commence a new action about the same subject matter, so long as the new complaint complies with Fed. R. Civ. P. 8(a).

In order to avoid the filing of unnecessary lawsuits, the Court will briefly address the merits of the sixth issue.  Because the plaintiff was a convicted criminal while housed at the Jail, he has no claim for the failure to afford notice and a hearing before a disciplinary offense is included in his record.  As the Supreme Court explained in rejecting a due process challenge to a prison disciplinary conviction:

> Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. . . .
> . . . .
> . . . We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Sandin v. Conner, 515 U.S. 472, 484, 486 (1995).  Thus, an inmate generally cannot maintain a due process claim based on his confinement in segregation, particularly where, as here, he suffered no loss of good-time credit.  See Sarmiento v. Hemingway, 93 Fed. Appx. 65, 66 (6th Cir. Mar. 15, 2004) ("Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no interest to remain free of

disciplinary confinement will be found in the case."); Utley v. Campbell, 84 Fed. Appx. 627, 629 (6th Cir. Dec. 15, 2003) ("In order to state a claim of a denial of due process during a disciplinary hearing, Utley was required, and failed, to show that he had been subjected to an atypical and significant hardship."); Williams v. Wilkinson, 51 Fed. Appx. 553, 556-57 (6th Cir. Nov. 15, 2002), cert. denied, 539 U.S. 929 (2003); see also Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (administrative segregation); Mackey v. Dyke, 111 F.3d 460 (6th Cir. 1997); Bruggeman v. Paxton, No. 00-3917, 2001 WL 861678, at *1 (6th Cir. June 30, 2001). In this case, the plaintiff spent, at most, seventy-two (72) hours in lock-down as a result of any disciplinary conviction, which is insufficient to implicate a liberty interest.[8] Moreover, any effect the plaintiff's alleged disciplinary infractions had on the decision of the Tennessee Board of Probation and Paroles is a collateral consequence that does not create a protected liberty interest. Williams v. Vidor, 67 Fed. Appx. 857, 859 (6th Cir. May 8, 2003); see also Sandin, 515 U.S. at 487.[9]

Accordingly, the sixth issue is DISMISSED, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), for failure to state a claim on which relief may be

---

[8] Although it is perhaps arguable that the conditions some inmates have allegedly been subjected to during lockdown, such as being left naked without bedding matters, constitute "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," Conner, 515 U.S. at 484; see also id. at 487, the complaint does not allege that the plaintiff himself was ever subjected to those harsh disciplinary measures. The plaintiff is not entitled to litigate alleged violations of the rights of other inmates.

[9] Finally, the fact that plaintiff was denied several visits because of purported disciplinary infractions he did not know he had received is inconsistent with his allegation that, until his parole hearing, he was unaware that there were disciplinary infractions in his record. As for the inconvenience to family members who made unnecessary visits to the Jail, the Court notes that prisons that follow more formal disciplinary procedures generally put inmates accused of disciplinary infractions in segregation pending a hearing with no access to the telephone. The inconvenience to plaintiff's family does not constitute a constitutional violation.

granted.

Plaintiff's seventh issue, concerning access to legal materials, is, in actuality, a claim that plaintiff was deprived of his First Amendment right of access to the courts. See Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996); see also Bounds v. Smith, 430 U.S. 817, 822 (1977). The Supreme Court has held that "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. However:

> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis v. Casey, 518 U.S. 343, 355 (1996); see also Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." Rodgers v. Hawley, 14 Fed. Appx. 403, 409 (6th Cir. June 22, 2001) (citing Lewis v. Casey, 518 U.S. at 351-53); see also Hadix v. Johnson, 182 F.3d 400, 405-06 (6th Cir. 1999) (explaining how

Lewis altered the "actual injury" requirement previously articulated by the Sixth Circuit). In Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996), the Sixth Circuit explained that "actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim."

In this case, plaintiff does not adequately allege that the defendants' actions caused him any actual injury. The only lawsuit that was implicated by the defendants' actions is the instant one, which the plaintiff has managed to file. There is no allegation in the complaint that the defendants' action caused actual prejudice to plaintiff's ability to litigate a meritorious claim.

Accordingly, the seventh issue also is DISMISSED, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), for failure to state a claim on which relief may be granted.

The eighth claim, pertaining to mail, does not state a constitutional claim. The Sixth Circuit has stated as follows:

> A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives. See Knop v. Johnson, 977 F.2d 996, 1012 (6th Cir. 1992). As we have noted, "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." Lavado v. Keohane, 992 F.2d 601, 607 (6th Cir. 1993). However, prison officials who open and read incoming mail in an arbitrary and capricious fashion violate a prisoner's First Amendment rights. See Parrish v. Johnson, 800 F.2d 600, 604 (6th Cir. 1986).

Sallier v. Brooks, 343 F.3d 868, 873-74 (6th Cir. 2003). In this case, the complaint alleges

21

that non-legal mail is read by Jail personnel, but there is no claim that the policy is not applied uniformly. Accordingly, this aspect of the eighth issue is without merit.

With respect to the allegations that legal mail is opened and read and that inmates are not supplied pens, paper, envelopes, and stamps, this claim is not alleged with sufficient specificity to permit the Court to ascertain whether, and to what extent, the plaintiff is personally affected by these alleged practices. Moreover, the complaint does not indicate the nature of the alleged "legal mail" at issue or whether it is opened in the presence of the inmate. See id. at 874-78. The plaintiff is not entitled to use this lawsuit as a vehicle for the vindication of the right of other inmates.

Accordingly, the eighth issue is DISMISSED, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), for failure to state a claim on which relief may be granted.

Finally, the allegations of the ninth issue are so vague, and encompass so many unrelated matters, that it is not possible to ascertain precisely what the plaintiff is complaining about. It is not clear, for example, whether the plaintiff contends that the Jail has a constitutional obligation to supply inmates with reading materials. In addition, it is unclear what the Jail's policy is with respect to the receipt of books, newspapers, and religious materials in the mail. The complaint does not allege that the plaintiff ordered, or was sent, some written material, which was refused by Jail officials. Finally, it is not clear whether the plaintiff was denied outside recreation because of his placement in

administrative segregation or for some other reason. Accordingly, this issue, as drafted, fails to comply with Fed. R. Civ. P. 8(a)(2).

Accordingly, the ninth issue is DISMISSED, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), for failure to state a claim on which relief may be granted.

III. Issuance of Service

It is ORDERED that the Clerk shall issue process for the remaining defendant, Obion County Sheriff Jerry Vastbinder, and deliver said process to the U.S. Marshal for service. As the complaint indicates that Sheriff Vastbinder is being sued in both his individual and official capacities, the Clerk shall issues summonses for Vastbinder personally and for Obion County. Service shall be made on defendant Vastbinder, individually, pursuant to Fed. R. Civ. P. 4(e) and Tenn. R. Civ. P. 4.04(1) & (10), either by mail or personally if mail service is not effective. Service shall be made on Obion County pursuant to Fed. R. Civ. P. 4(j)(2) and Tenn. R. Civ. P. 4.04(7) & (10). All costs of service shall be advanced by the United States. A copy of this order shall be served on the defendants along with the summons and complaint.

It is further ORDERED that the plaintiff shall serve a copy of every further document filed in this cause on the attorney for the defendants, or on any defendant that has no attorney. The plaintiff shall make a certificate of service on every document filed. The plaintiff shall familiarize himself with the Federal Rules of Civil Procedure and this Court's

Local Rules.[10]

The plaintiff shall promptly notify the Clerk of any change of address or whereabouts. Failure to comply with these requirements, or any other order of the Court, may result in this case being dismissed without further notice.

IT IS SO ORDERED this _22nd_ day of December, 2005.


_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[10] A copy of the Local Rules may be obtained from the Clerk upon request, at no cost.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 5 in case 1:04-CV-01278 was distributed by fax, mail, or direct printing on December 29, 2005 to the parties listed.

Shaun Bondurant
00354826
P.O. Box 1150
Henning, TN 38041--115

Honorable James Todd
US DISTRICT COURT